[Crim. No. 2115.   First Appellate District, Division One.—March 5, 1940.]

THE PEOPLE, Respondent, v. RAYMOND ANDERSON, Appellant.

Willard W. Shea, Public Defender, and Joseph R. Deasy, Assistant Public Defender, for Appellant.

Earl Warren, Attorney-General, and F. Walter French, Deputy Attorney-General, for Respondent.

PETERS, P. J.—Anderson and his codefendant Malone, by information, were jointly charged with having committed three separate robberies, and with the theft of an automobile. In addition, Anderson was charged with a prior conviction of forgery (which he admitted), for which he was on probation at the time the offenses charged in the information were committed. Malone was found guilty on all three robbery counts, and of the theft of the automobile. He has not appealed. Appellant was convicted on one robbery count and of the theft of the automobile.

On this appeal the sole contention of appellant is that, as a matter of law, the evidence is insufficient to sustain his conviction.

The theory of the prosecution was that Malone and Anderson engaged in the robbery of various grocery stores in Oakland; that Malone robbed the stores and that Anderson drove the car used by the parties for their ''getaway''; that for such purposes the parties used an automobile recently stolen by them. To support this theory the prosecution produced the following evidence:

George McClain and his partner, Fitzpatrick, operated a used car lot in Oakland. On July 5, 1939, they owned and had for sale at their place of business, an Auburn convertible sedan, painted light tan, with red wheels and a canvas top. It bore 1939 California license plates 2 E 723. The car was on the lot at, or about, 1 P. M. on July 5th when McClain left his place of business unattended for about twenty minutes. When he returned at about 1:20 P. M. the car was gone. He testified that neither he nor his partner gave any person permission to take the car. At about 3 o'clock of that day McClain received a telephone call from a person unknown telling him the car would be left on a street near the used car lot. Some time after 4:30 P. M. of that day the car was found abandoned on a street nearby.

When McClain returned to his place of business at 1:20 P. M. and discovered that the Auburn was missing, he was

accompanied by a business acquaintance by the name of Virgil Martin. Martin was engaged in the tire business and had sold McClain tires for the Auburn. He was familiar with the car. Later that afternoon Martin and his wife were driving out East Twelfth Street in the city of Oakland, when, between Fourth and Fifth Avenues, they saw the missing Auburn cruising slowly along. Mrs. Martin fixed the time as between 2 and 3 o'clock, while Mr. Martin fixed the time as between 2:30 and 3 o'clock. The Auburn slowly proceeded to completely encircle the block, followed by the Martins. After the Auburn had encircled the block Martin drove alongside. Both the Martins testified there were two men in the car. Mrs. Martin positively identified appellant Anderson as the driver but could not identify Malone as the passenger. Mr. Martin positively identified Malone as the passenger, but could not positively identify Anderson as the driver, although he testified that Anderson "looked like" the driver of the car.

Martin told the occupants of the Auburn that the owner of the car was looking for it and that the owner believed it was stolen. Mrs. Martin testified that Anderson replied: "Yes, we are going to use it about 15 more minutes and then we are going to return it". This statement, according to Mrs. Martin, was corroborated by the passenger in the Auburn. Mr. Martin testified his conversation was with the passenger Malone and not with the driver. Otherwise, in substance, his testimony corroborated that of his wife.

The robbery forming the basis of the charge upon which Anderson was convicted took place between Fourth and Fifth Avenues on East Twelfth Street, Oakland, at about 3 o'clock that same day. Located in this block was a Safeway store in charge of John Tuite. This witness testified that at about 3 o'clock he was held up by Malone who covered him with a gun and took about $38 from him. As Malone left the store Tuite followed him. He saw Malone "jump into the *rear* seat of a convertible sedan", whereupon the car drove off. (Italics ours.) Tuite testified that he noted the license number, which was California 1939 license 2 E 723. He further testified that, as the car "pulled off", Malone "was looking out the back window". He identified the Auburn car from photographs. He further testified: "I saw Malone

in the back seat after I got the number". He did not observe any other person in the car.

On July 10, 1939, appellant and Malone were arrested while entering a cafe in Oakland. Both denied any participation in any of the offenses charged. From statements made to the police, and from appellant's testimony on the trial, it appears that Malone and appellant are related, and that on July 5, 1939, both lived at the same rooming house, although they occupied different rooms. In Malone's room an unloaded gun was found. Anderson took the stand in his own defense. He testified that on July 5th he had gone to San Francisco and returned early in the afternoon and then went to a cafe where he spent the balance of the afternoon and early evening drinking. He named at least one person whom he stated saw him there, but this person was not produced as a witness. Malone did not take the stand.

This constitutes a fair summary of the pertinent evidence on the two counts upon which Anderson was convicted. He contends that, while this testimony may raise a suspicion as to his guilt, as a matter of law, it is insufficient to sustain the conviction on either count.

While it must be conceded that the testimony is not as strong as might be desired, it is our opinion that it is legally sufficient.

█ First as to the robbery. Appellant contends that the only evidence to connect him with the robbery was the testimony of the Martins that he was seen in the company of Malone shortly before the robbery. The Martins' testimony, and the testimony of the other witnesses, proved more than that. It tended to show, and in view of the verdict we must assume the jury found, that at about 3 o'clock Anderson was observed in the company of Malone driving slowly along East Twelfth Street between Fourth and Fifth Avenues, Oakland, in a recently stolen automobile; that the Safeway store that was robbed was in that block; that he cruised slowly around the block; that at about that time Malone robbed the Safeway store; that in leaving the scene Malone was driven away in the stolen car by an accomplice. From these facts the jury was reasonably entitled to conclude that Malone left the scene of the robbery in a car driven by Anderson; that this had been prearranged between Malone and Anderson; that appellant was a joint participant in the crime. █

Guilty participation may be shown by circumstantial evidence as well as by direct evidence. If the circumstances proved reasonably justify the conclusion of the jury, the reviewing court has no authority to interfere therewith. The principles applicable in such a case were recently stated by this court as follows in *People* v. *Schneider,* 36 Cal. App. (2d) 292 [98 Pac. (2d) 215] : " . . . appellant's main attack upon the sufficiency of the evidence is based upon the fact that there is an absence of direct evidence as to the actual delivery of the check to Weyel. It is well settled, however, that a fact relating to the guilt of an accused may be established by circumstantial as well as by direct evidence; that the right to draw proper inferences from the evidence is a function of the jury, and that as long as its conclusions do not do violence to reason, a reviewing court is not permitted to substitute its finding of the ultimate fact for that reached by the constitutional as well as the statutory arbiter thereof. (*People* v. *Latona,* 2 Cal. (2d) 714 [43 Pac. (2d) 260] ; *People* v. *Martinez,* 20 Cal. App. 343 [128 Pac. 952].) In other words, as frequently said by the courts, circumstantial evidence may be as conclusive in its convincing force as the testimony of witnesses to the overt act (*People* v. *Nagy,* 199 Cal. 235 [248 Pac. 906] ; *People* v. *Perkins,* 8 Cal. (2d) 502 [66 Pac. (2d) 631]), and consequently where the circumstances proved reasonably justify the conclusion of the jury expressed in its verdict, it is beyond the authority of the reviewing court to interfere therewith. (*People* v. *Latona, supra.*) Furthermore, in considering the question of the sufficiency of the evidence, the reviewing court must assume in favor of the verdict the existence of every fact which the jury could have reasonably drawn therefrom. (*People* v. *Perkins, supra.*) "

Appellant relies on the case of *People* v. *Seawright,* 72 Cal. App. 414 [237 Pac. 796]. In that case two men committed a robbery at 11:30 A. M. Approximately an hour later the two men who committed the robbery were picked up in an automobile. Seawright was in their company. In the car several guns were found, as well as some of the stolen property. Seawright's conviction for robbery was reversed on the ground of the insufficiency of the evidence. The vital distinction between that case and the present one is that in the Seawright case no one identified Seawright as being in the car

at or shortly prior to the time of the robbery. In the instant case appellant was identified as the driver of a stolen car that was cruising about the scene of the robbery shortly prior to its occurrence. Within a very few minutes that car was used as a "getaway" car by Malone under circumstances from which the jury could infer that an accomplice was driving. The evidence amply supports the implied finding of the jury that Anderson was that driver.

█ Appellant contends that, even if it was proved that he was the driver of the "getaway" car, there is no evidence that he had any knowledge that Malone had committed a robbery. Obviously, in the absence of a confession, such knowledge could only be proved by circumstantial evidence. Whether such knowledge existed is a question of fact for the jury. (*People* v. *Martin,* 12 Cal. (2d) 466 [85 Pac. (2d) 880].)

█ In connection with theft charge, appellant argues that the most that was proved against him was that he was in possession of the stolen car about an hour after it was stolen. He relies on the rule that mere possession of stolen property, unexplained, will not justify a conviction for the theft of the property. That rule is clearly stated in *People* v. *King,* 8 Cal. App. 329 [96 Pac. 916], relied on by appellant. The rule is a sound and salutary one, but it has no application to the facts of this case. Here the evidence showed far more than unexplained possession of the stolen car. When the Martins stopped the Auburn and told appellant and Malone that the owner was looking for that car which he believed to be stolen, neither Anderson nor Malone denied that the car was stolen but simply stated that they were going to use the car for fifteen minutes more and then "return" it. Appellant did not deny the car was stolen, but in effect admitted it, and stated he would "return" it—i. e., bring it back to the place from which it was taken. When this evidence is coupled with the testimony of McClain that neither he nor his partner had given Anderson, Malone, or any other person permission to take the car, and with the evidence that the car was used in a robbery and shortly thereafter abandoned, it is evident that the jury could reasonably have inferred that appellant participated in the theft of the car. (See *People* v. *Griffin,* 9 Cal. App. (2d) 246 [49 Pac. (2d)

321] ; *People* v. *Russell,* 34 Cal. App. (2d) 665 [94 Pac. (2d) 400].)

The judgments of conviction and the orders denying new trials appealed from are affirmed.

Knight, J., and Ward, J., concurred.