[Crim. No. 5198.   In Bank.   Oct. 26, 1951.]

THE PEOPLE, Respondent, v. WILLIAM THOMAS COEFIELD, Appellant.

Robert H. Kroninger and Harold C. Faulkner, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Deputy Attorney General, J. F. Coakley, District Attorney, Folger Emerson, Assistant District Attorney, Vernon L. Gooden, Deputy District Attorney, for Respondent.

GIBSON, C. J.—Defendant was charged by information with the murder of Melvin Tokus. A jury found him guilty of murder of the first degree and made no recommendation as to punishment. (See Pen. Code, § 190.)   Defendant's plea of not guilty by reason of insanity was withdrawn, his motion for a new trial was denied, and the death penalty was imposed. This appeal is automatic under section 1239(b) of the Penal Code.

On the evening of October 7, 1949, defendant and two other men, Jolby and Anderson, met and agreed to rob the Three Point Liquor Store in Oakland and planned the part each of them was to play.   Defendant and Jolby, who were both armed, entered the store shortly after midnight when no customers were on the premises.   Anderson remained outside temporarily, apparently acting as lookout, and then followed his companions into the store.   In the meantime, defendant asked for two bottles of wine, and when they were brought by Tokus, the clerk, defendant announced that it was a "stickup" and directed Tokus to place the store's money in a paper bag and give it to Anderson.   Jolby disarmed the store's watchman, and Tokus and the watchman were then ordered into a back room and robbed of their wallets.   To aid in making an escape, defendant struck Tokus on the head with his gun and knocked him to the floor, and Jolby struck the watchman several blows on the head with his gun.   Tokus started to rise, and defendant struck him again on the head. At that moment the gun discharged, and the bullet entered Tokus' brain, causing his death.   After the shot, defendant removed a wristwatch from Tokus' arm, and the robbers left

the store and drove to San Francisco, where they divided the proceeds of the robbery.

Defendant took the stand in his own behalf and admitted that he entered the store with a gun for the purpose of robbery and told the clerk it was a "stickup," that he and Jolby forced Tokus and the watchman into the back room where he took Tokus' wallet, that he struck Tokus on the head with his gun, knocking him down, and struck him again when he started to rise, and that he hit Tokus on the head for the purpose of "knocking him out" to permit escape after the robbery and took the wristwatch after the shooting. Defendant stated that he heard a shot when he struck Tokus the second time but did not know he had shot Tokus, that he was holding the gun by the handle but his finger was not on the trigger and he did not pull it, and that he did not intend to discharge the gun or kill anybody.

The evidence is clearly sufficient to support the verdict of murder in the first degree in view of the provisions of section 189 of the Penal Code that "All murder . . . which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree." Defendant argues that it must first be shown that there was a *murder*, not merely a killing, and that to have a murder there must be a malicious killing and an intent to kill. (See Pen. Code, § 187.) It has been held, however, that when one enters a place with a deadly weapon for the purpose of committing robbery, malice is shown by the nature of the attempted crime, and the law fixes upon the offender the intent which makes any killing in the perpetration of or attempt to perpetrate the robbery a murder of the first degree. (*People* v. *Bostic,* 167 Cal. 754, 760-761 [141 P. 380] ; see *People* v. *Milton,* 145 Cal. 169, 171-172 [78 P. 549] ; *People* v. *Olsen,* 80 Cal. 122, 126-127 [22 P. 125].) Other cases have pointed out that such a killing is murder of the first degree by force of section 189 of the Penal Code, regardless of whether it was intentional or accidental. (*People* v. *Valentine,* 28 Cal.2d 121, 135 [169 P.2d 1] ; *People* v. *Lindley,* 26 Cal.2d 780, 791 [161 P.2d 227] ; *People* v. *Boss,* 210 Cal. 245, 249 [290 P. 881] ; *People* v. *Denman,* 179 Cal. 497, 498 [177 P. 461].) Here, as we have seen, the evidence, including defendant's own testimony, shows that the killing was committed in connection with conduct intended to facilitate escape after the robbery and as part of one continuous transaction; accordingly, it constituted murder of the first

degree by the terms of the statute. (See *People* v. *Chavez, ante,* pp. 656, 670 [234 P.2d 632] ; *People* v. *Rye,* 33 Cal.2d 688, 692-693 [203 P.2d 748] ; *People* v. *Boss, supra,* 210 Cal. at pp. 250-252.) In such a case the jury has no option but to return a verdict of murder of the first degree, whether the killing was done intentionally or accidentally. (*People* v. *Perry,* 195 Cal. 623, 638 [234 P. 890] ; *People* v. *Witt,* 170 Cal. 104, 108 [148 P. 928].) ██ It follows that it was not error to instruct the jury that the only criminal intent which the prosecution had to show was a specific intent to rob Tokus and that it was not required to prove a deliberate or premeditated killing or to prove any intent to kill. (*People* v. *Milton,* 145 Cal. 169, 172 [78 P. 549] ; see *People* v. *Denman,* 179 Cal. 497, 498-499 [177 P. 461] ; *People* v. *Boss,* 210 Cal. 245, 249-250 [290 P. 881].)

The prosecution was permitted to present evidence that defendant had participated in three other liquor store robberies within a month of the homicide. There was testimony that on two prior occasions defendant and an accomplice robbed a certain liquor store in Emeryville at about 2 o'clock in the morning. In both instances the clerk was ordered into a back room where defendant hit him on the head with a gun. The third robbery took place in Sacramento on the night after the homicide. The owner testified that defendant, Jolby and Anderson entered his store, took his money and told him to go to the basement, that Jolby struck him two or three times on the head with a gun, and that the gun then discharged and the bullet went through Jolby's hand and the witness' knee. Defendant complains that the evidence was not admissible because it related to crimes for which he was not on trial.

██ It is well settled that if evidence in a criminal case tends logically, naturally and by reasonable inference to establish any fact material for the People, or to overcome any material matter sought to be proved by the defense, it is admissible whether it embraces the commission of another crime or not and whether it be part of a single design or not. (*People* v. *McMonigle,* 29 Cal.2d 730, 742 [177 P.2d 745] ; *People* v. *Peete,* 28 Cal. 2d 306, 315 [169 P.2d 924] ; *People* v. *Sanders,* 114 Cal. 216, 230 [46 P. 153].) As stated in *People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7] : ''The general rule, universally recognized, is that in a criminal prosecution the defendant can be tried for no other offense than that which he is charged in the indictment or information; evidence of collateral independent crimes is not admissible. [Citations.]

The equally well recognized exceptions to this rule are clearly defined. Evidence of other crimes may be admitted when it tends directly to establish the crime charged by proving a material fact, where it is part of the res gestae, or where it helps to disclose motive, intent, premeditations, guilty knowledge, malice, or a common plan or scheme.''

Under the theory of the prosecution, the fact that defendant was engaged in a robbery was a material element of the crime of murder of the first degree. Since defendant had pleaded not guilty, it was incumbent on the prosecution to establish the element of intent to rob beyond a reasonable doubt, and as part of the proof it was proper to show that the Three Point robbery was part of a common scheme, design or plan to commit robberies and then make escape easier by rendering the victims unconscious. (See *People* v. *Arnold*, 199 Cal. 471, 486-487 [250 P. 168] ; *People* v. *McMonigle*, 29 Cal.2d 730, 743-744 [177 P.2d 745] ; *People* v. *King*, 13 Cal.2d 521, 527-528 [90 P.2d 291] ; *People* v. *Thorne*, 10 Cal.2d 705, 707-708 [76 P.2d 491] ; *cf. People* v. *David*, 12 Cal.2d 639, 647 [86 P.2d 811].) In view of the striking similarities in the method of operation, the evidence was clearly admissible. In each instance the place robbed was a liquor store, the robbery was committed in the late evening or early morning, a gun was used to intimidate the victim, who was forced into a back room or basement away from public view, and the victim was struck on the head with the gun to render him unconscious and permit the robbers to escape. Since the evidence was relevant on the question of common scheme and intent to rob, it was admissible whether the other offenses were prior or subsequent. (*People* v. *Weir*, 30 Cal.App. 766, 767 [159 P. 442] ; *People* v. *Zimmerman*, 11 Cal.App. 115, 118 [104 P. 590] ; *cf. People* v. *Dabb*, 32 Cal.2d 491, 500 [197 P.2d 1].)

Defendant claims that the evidence should not have been admitted because there was other proof of defendant's participation in the robbery. He also complains that the evidence should not have been presented as part of the prosecution's case in chief, but should have been reserved for use as possible rebuttal, because defendant had made a previous statement to the district attorney in which he admitted that he participated in the Three Point robbery and that a killing resulted. The evidence was relevant, and under all the circumstances the court did not err in admitting it even though there was other evidence to prove the same matter. (See *People* v. *McMonigle*, 29 Cal.2d 730, 742 [177 P.2d 745] ; *People* v. *Jackson*, 36 Cal.2d 281, 285 [223 P.2d 236].)

█ Nor was there any duty on the part of the prosecution to withhold the evidence for possible use on rebuttal, since proof of intent to rob was a proper part of the State's case in chief and was admissible even if the State had some reason to anticipate that the defendant would take the stand and admit his participation in the Three Point robbery.

█ Defendant's final contention is that it was prejudicial error for the court to instruct the jurors that the People had a right to have the law properly executed and that sympathy for defendant should not influence their verdict without also telling them that sympathy for the decedent should likewise not affect their verdict. The instruction complained of, however, does not unduly stress the duty to disregard sentiment for the accused, and the jury was elsewhere instructed to consider the case without regard to sympathy, prejudice or bias for or against anyone involved in the case.

The judgment and order denying a new trial are affirmed.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of affirmance but I do not agree with the holding in the majority opinion that evidence of the other robberies alleged to have been committed by the defendant was admissible under any sound legal theory, and such holding is clearly contrary to the holding of this court in the recent case of *People* v. *Newson, ante,* p. 34 [230 P.2d 618].

I have heretofore expressed my view with respect to the admission of evidence of crimes other than that which is charged against the defendant and for which he is being tried, and the majority holding in the case at bar on this issue is clearly contrary to the settled rule in all common law jurisdictions (see dissent *People* v. *Dabb,* 32 Cal.2d 491, 501 [197 P.2d 1]; *People* v. *Westek,* 31 Cal.2d 469, 483 [190 P.2d 9]; *People* v. *Peete,* 28 Cal.2d 306, 322 [169 P.2d 924]).

In the case at bar, however, I think there is little doubt but that the jury would have returned the same verdict had the erroneously admitted evidence of other crimes been excluded, and therefore the admission of such evidence in this case cannot be said to have been prejudicial to the defendant. For this reason, I concur in the judgment of affirmance.

Appellant's petition for a rehearing was denied November 19, 1951. Carter, J., voted for a rehearing.